**SCHLICHTER & SHONACK, LLP**
WILLIAM A. PERCY, Bar No. 297325
2381 Rosecrans Avenue, Suite 326
El Segundo, CA 90245
Telephone: (310) 643-0111
Fax: (310) 643-1638

*Attorney for Plaintiff Terry Fabricant and the Proposed Class*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| TERRY FABRICANT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIGNAPAY, LTD. and JOHN DOE CORPORATION D/B/A PAYLORATE.COM<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR:<br>1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)<br>2. KNOWING OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)<br><br>Class Action<br><br>DEMAND FOR JURY TRIAL |

Plaintiff TERRY FABRICANT ("Plaintiff"), by his undersigned counsel, for this class action complaint against Defendants SIGNAPAY, LTD. and JOHN DOE CORPORATION D/B/A PAYLORATE.COM and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Defendants"), alleges as follows:

## I. NATURE OF THE ACTION

1. <u>Nature of Action</u>. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## II. PARTIES

2. Plaintiff Terry Fabricant is an individual residing in California, in this District.

3. Signapay, Ltd. is a Texas corporation with its principal place of business in Irving, Texas and a registered agent of John R. Martillo, 4100 W. Royal Lane, Suite 150 in Irving, TX 75063. It does business in California and throughout the United States, including sending applications to potential customers, as it did with the Plaintiff through PayLowRate.com.

4. Defendant John Doe Corporation is a company hired by SignaPay that makes automated telemarketing calls, such as the one made to the Plaintiff. John

Doe Corporation regularly conducts business in this District, including through the making of telemarketing calls, as it did with the Plaintiff.

### III. JURISDICTION AND VENUE

5. <u>Jurisdiction</u>. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because they arise under a law of the United States: 47 U.S.C. § 227.

6. <u>Personal Jurisdiction</u>. This Court has personal jurisdiction over Defendants because the challenged calls at the heart of this case were directed into California. Furthermore, SignaPay's application was sent to the Plaintiff in California in an attempt to secure more business in California.

7. <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiff resides in this District and the challenged calls at the heart of this case were directed by Defendants into this District.

### IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

<u>The History of the TCPA</u>

8. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called

party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to people who receive calls in violation of § 227(b)(1)(A). *Id.* § 227(b)(3).

10. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and can be costly and inconvenient.

11. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

12. Since 2013, the FCC has required "prior express written consent" for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent,

i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted).

<u>The Growing Problem of Automated Telemarketing</u>

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

14. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket

No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

15. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

16. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

17. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by

- 6 -
COMPL.
*Fabricant v. Signapay, Ltd., el. al.*

2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

## V.    FACTUAL ALLEGATIONS

18.    SignaPay is a company that supports businesses accepting electronic payments.

19.    However, SignaPay's contact with the potential new customers is limited, and the telemarketing is conducted by third parties, such as PayLoRate.com.

20.    Defendants' strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

21.    Defendants uses ATDSs that have the capacity to store or produce telephone numbers to be called.

22.    Defendants' ATDSs include predictive dialers.

23.    Recipients of these calls, including Plaintiff, did not consent to receive them.

24.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

<u>The Automated Telemarketing Call From Defendants to a Number Listed on the National Do Not Call Registry</u>

25. Plaintiff's telephone number, (818)-352-XXXX, is registered to a cellular telephone service, which is the number he received the call on.

26. It has been on the National Do Not Call Registry since 2008.

27. On March 28, 2019, the Plaintiff received a call from PayLoRate.com.

28. The caller ID showed the telephone call was from (833) 293-3337.

29. That phone number is also (833) BYE-FEES, the number advertised on PayLoRate.com's website. *See* https://www.paylorate.com/contact (last visited April 18, 2019).

30. Plaintiff answered.

31. Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause. This is indicative of the fact that the calls were made with an ATDS.

32. Furthermore, the Caller ID (833) 293-3337 has been identified as associated with robocalls, further indicating the use of an ATDS. *See* https://www.nomorobo.com/lookup/833-293-3337 (Last visited April 18, 2019).

33. Eventually, however, a live salesperson did come on the line.

34. The salesperson claimed that their company was calling about saving money regarding credit card processing.

35. In order to identify the caller, Plaintiff provided his email address to receive more information to identify the caller.

36. The Plaintiff received an e-mail from "veronica@paylorate.com" confirming the telemarketing call was from PayLoRate.com.

37. In that e-mail was an application for payment processing services from SignaPay.

38. The application was entitled "SignaPay Merchant Processing Application & Agreement".

39. The application also stated that "SignaPay is a registered ISO of Commercial Bank of California, Irvine, CA,"

40. The application would also bind SignaPay in contract, as the application had a signature place for SignaPay, Ltd.

41. The call was not necessitated by an emergency.

42. Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

43. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for

incoming calls. The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

## VI. SIGNAPAY'S LIABILITY AND ITS ARRANGEMENT WITH JOHN DOE CORPORATION

44. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

45. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

46. In that ruling, the FCC instructed that sellers such as SignaPay may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." *May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

47. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

48. SignaPay is liable for the PayLoRate telemarketing calls because it actively participated in those calls by participating in the actual calling through the submission of the application, as described above.

- 11 -
COMPL.
*Fabricant v. Signapay, Ltd., el. al.*

49. By engaging PayLoRate to make calls on behalf of its agents to generate new business, SignaPay "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

50. Furthermore, PayLoRate.com's ability to bind SignaPay in contract is an additional indication of their agency.

51. Moreover, SignaPay maintained interim control over PayLoRate's actions.

52. For example, SignaPay had absolute control over whether, and under what circumstances, it would accept a customer.

53. Furthermore, SignaPay had day-to-day control over PayLoRate's actions, including the ability to prohibit it from using an ATDS to contact potential customers of SignaPay. SignaPay failed to make such an instruction to PayLoRate, and as a result, is liable for PayLoRate's conduct.

54. SignaPay also gave interim instructions to PayLoRate by providing the volume of calling and leads it would purchase.

55. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should

be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## VII. CLASS ACTION ALLEGATIONS

56. <u>Class Definition</u>. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of a class (the "Class") defined as follows:

> All persons to whom: (a) Defendants and/or a third party acting on Defendants' behalf made one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time in the period that begins four years before the date of filing the original complaint in this case and ends at the date of trial.

57. <u>Exclusions</u>. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, the judges to whom this case is assigned and the legal representatives, assignees, and successors and immediate family members of all of the foregoing.

58. <u>Numerosity</u>. The Class is so numerous that joinder of all its members is impracticable. On information and belief, the Class has more than 100

members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

59. <u>Commonality</u>. The key questions driving the outcome of this dispute have the same answers for all Class members. Those questions include, but are not limited to, the following:

    a. Whether Defendants used an ATDS, as defined by *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018);

    b. Whether Defendants purchased batches of leads of prospects who had not consented to be called by it;

    c. Whether SignaPay is vicariously liable for the conduct of PayLoRate.com.

    d. Whether Defendants' violations of the TCPA were knowing and willful;

    e. Whether Defendants is liable for ATDS-generated and/or automated or prerecorded calls promoting its products made by third parties; and

    f. Whether Defendants should be enjoined from engaging in similar telemarketing in the future.

60. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims and those of the Class arise out of the same course of conduct by Defendants and are based on the same legal and remedial theories.

61. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable counsel with experience in TCPA class litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has interests contrary to or conflicting with those of the proposed Class.

62. <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. For example, the TCPA's statutory damages obviate the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important advantages, including judicial economy.

63. <u>Superiority</u>. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are dwarfed by the cost of prosecution. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated and because the TCPA lays down

bright-line standards for liability and damages. Class treatment is superior to thousands of individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

64. Only 1 in 7 million robocalls results in the filing of a federal TCPA suit. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-fordec-2017-year-in-review/ (4,392 TCPA complaints). Except to the extent that they are remedied by class actions, the other 6,999,999 are made with impunity.

65. <u>Injunctive and Declaratory Relief is Appropriate</u>. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

66. <u>Notice</u>. Plaintiff anticipates that the mailing address and/or electronic mailing address of Class members will be obtained during discovery from

Defendants' calling records (potentially in conjunction with third-party databases that map phone numbers to such addresses). Plaintiff anticipates that Class counsel will notify Class members in writing at such addresses.

## VIII.  FIRST CLAIM FOR RELIEF

**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))**

67.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

68.  The foregoing acts and omissions of Defendants and/or their affiliates or agents, and/or other persons or entities acting on Defendants' behalf, constitute numerous violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency calls to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

69.  Therefore, Plaintiff and members of the Class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute. 47 U.S.C. § 227(b)(3)(B).

70.  Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants, its affiliates and agents, and any other persons or entities acting on its behalf from violating the TCPA, 47 U.S.C. §

227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice.

## IX. SECOND CLAIM FOR RELIEF

**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))**

71. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

72. As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendants, its affiliates or agents, and/or other persons or entities acting on its behalf, Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute. 47 U.S.C. § 227(b)(3).

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Class, prays for judgment against Defendants as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that actions complained of herein by Defendants and/or its affiliates, agents, or related entities violate the TCPA;

E. An order enjoining Defendants and its affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. An award to Plaintiff and the Class of attorney's fees and costs, as allowed by law and/or equity;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Orders granting such other and further relief as the Court deems necessary, just and proper.

## XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated: May 6, 2019

Respectfully Submitted,
SCHLICHTER & SHONACK, LLP

*/s/ William A. Percy*
By: WILLIAM A. PERCY
*Attorney for Plaintiff*
*Terry Fabricant and the Proposed Class*